# Order

Michigan Supreme Court
Lansing, Michigan

November 9, 2012

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

143621

TIMOTHY ADER,
        Plaintiff-Appellee,

v

                                        SC: 143621
                                        COA: 290583
                                        Saginaw CC: 08-001822-CZ

DELTA COLLEGE BOARD OF TRUSTEES,
        Defendant-Appellant.
_____/

On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we VACATE our order of February 1, 2012. The application for leave to appeal the July 14, 2011 judgment of the Court of Appeals is DENIED, because we are no longer persuaded that the questions presented should be reviewed by this Court.

MARKMAN, J. (*dissenting*).

I respectfully dissent from the denial of leave because I believe the 'standing' doctrine set forth in *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349 (2010) (*LSEA*), violates the constitutional separation of powers and should be overruled.

As a threshold matter, whether plaintiff's standing is determined under the rule of *LSEA* or the prior rule of *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726 (2001), and *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608 (2004), is dispositive of the resolution of this case. In this regard, it must be noted that both lower courts initially decided that plaintiff lacked standing under *Lee* and *Cleveland Cliffs*. Only after this Court remanded to the Court of Appeals for reconsideration in light of *LSEA* did the Court of Appeals reverse the trial court and conclude that plaintiff had standing under *LSEA*. Moreover, the parties themselves have both asserted that whether *LSEA* or *Cleveland Cliffs* governs is dispositive. The issue of which of these alternative doctrines governs standing in Michigan is squarely before this Court.

In *Lee*, this Court voted 6-1 to adopt the constitutionally based standing test articulated by the United States Supreme Court in *Lujan v Defenders of Wildlife*, 504 US 555, 559-560 (1992), which provides:

> "Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."' Second, there must be a causal connection between the injury and the conduct complained of—the

> injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" [*Lee*, 464 Mich at 739, quoting *Lujan*, 504 US at 559-560.]

This Court then reaffirmed *Lee* in *Cleveland Cliffs*. However, in *LSEA*, this Court overruled the standing doctrine set forth in *Lee* and *Cleveland Cliffs* and established in its place a "limited, prudential doctrine" that uncoupled standing from its constitutional moorings, providing:

> [A] litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*LSEA*, 487 Mich at 372.]

Yet, as former Justice CORRIGAN pointed out in her dissent in *LSEA*, unlike the *Lujan* test, the *LSEA* test is "really no test at all[.]" *Id.* at 388 (CORRIGAN, J., dissenting). It is a "broad and amorphous principle that promises to be nearly impossible to apply in a society that operates under the rule of law." *Id.* at 417. The *LSEA* test provides standing not only where the Legislature has seen fit to confer standing, but also where it may be *inferred* that the Legislature intended to confer standing. However, the Legislature has no dispositive authority to confer standing because standing is constitutionally based within the separation of powers mandated by the Michigan Constitution.

The separation of powers is explicitly set forth in Const 1963, art 3, § 2, which provides:

> The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.

Our constitution further provides that the Legislature is to exercise the "legislative power" of the state, Const 1963, art 4, § 1, the Governor is to exercise the "executive power," Const 1963, art 5, § 1, and the judiciary is to exercise the "judicial power," Const 1963, art 6, § 1. As we explained in *Cleveland Cliffs*, perhaps the most critical element of the "judicial power" has been its traditional requirement of a genuine "case or controversy" between the parties, one in which there is a real, not a hypothetical, dispute, and one in which the plaintiff has suffered a particularized or personal injury. Absent such an injury, little stands in the way of the judicial branch becoming "intertwined in every matter of public debate." *Cleveland Cliffs*, 471 Mich at 615. Through this intertwining, the interests of the other branches of government would necessarily be implicated, particularly the interests of the executive branch in administering the law. That is, if the Legislature is permitted at its discretion to confer jurisdiction upon this Court, unconnected with any genuine case or controversy, this Court would be transformed in character and empowered to decide matters that have historically been within the exclusive purview of the Governor and the executive branch. Unless there is an individual who has personally and particularly been injured by the administration of the laws, it is not the role of the judicial branch to monitor the work of the executive and determine whether it is carrying out its responsibilities in an acceptable fashion. That role is left to the people through their right to petition the Governor, and through their right to vote. The judiciary of this state does not act as a superadministrator of the law.

Given the final authority of the judicial branch to accord meaning to the Constitution, the term "judicial power" cannot ultimately be defined by the Legislature any more than "unreasonable searches and seizures" or the "equal protection of the laws" can ultimately be defined by the Legislature. That a broadening and redefinition of the "judicial power" comes in this case, as in *Cleveland Cliffs*, not from the judiciary itself, usurping a power that does not belong to it, but from the Legislature purporting to confer new powers upon the judiciary, the exercise of such power is no less improper. In either case, the separation of powers prevents the reallocation of executive power to the judiciary.

Because I believe that 'standing' is perhaps the most vital doctrine in limiting the "judicial power" to its proper purview, and because whether the rule of *LSEA* or that of *Lee* and *Cleveland Cliffs* is applied in this case is dispositive of its resolution, I would overrule *LSEA*, reverse the Court of Appeals' decision on remand, and reinstate the Court of Appeals' initial decision.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

November 9, 2012

_____
Clerk

t1106