*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN EAGAN, SAMMIE LEWIS, MICHAEL SHANE, PHILLIP SHANE, SARAH TORRES, and JAMES AND GRACE LEE BOGGS CENTER TO NURTURE COMMUNITY LEADERSHIP,

Plaintiffs-Appellants,

v

CITY OF DETROIT, MAYOR OF DETROIT, CHIEF DEPUTY FINANCE DIRECTOR OF DETROIT, CHIEF PROCUREMENT OFFICER OF DETROIT, and POLICE CHIEF OF DETROIT,

Defendants-Appellees.

FOR PUBLICATION
October 09, 2025
10:35 AM

No. 366454
Wayne Circuit Court
LC No. 22-014207-AW

Before: GARRETT, P.J., and K. F. KELLY and SWARTZLE, JJ.

K. F. Kelly, J. (*dissenting*).

I respectfully dissent from the majority's decision to partially reverse the trial court's grant of summary disposition to defendants. In the proceedings below, the trial court concluded that plaintiffs—who consist of residents and a nonprofit organization—had standing to challenge defendants' decision to procure "ShotSpotter" technology, but failed to demonstrate that defendants violated the law. Because I conclude that plaintiffs lacked standing to challenge the decision, I would ultimately affirm the trial court's order dismissing plaintiffs' complaint.

As the majority summarizes, this dispute arises over plaintiffs' disagreement with defendants' decision to implement ShotSpotter gunshot-detection technology in Detroit, which uses sensors to detect the sound of firearm discharge and then relays the location of the gunfire to the police. Plaintiff James and Grace Lee Boggs Center to Nurture Community Leadership is a nonprofit organization. Individual plaintiffs are residents of the city of Detroit, some of whom live in the city's Eighth Precinct where ShotSpotter technology has been implemented and used in limited areas. Plaintiffs contend that defendants failed to comply with the Citizens Input Over Government Surveillance ordinance ("CIOGS Ordinance"), Detroit Ordinances, § 17-5-451 *et seq.*, when it approved contracts to procure ShotSpotter technology.

-1-

In the trial court, defendants argued unsuccessfully that they were entitled to summary disposition because plaintiffs lacked standing to maintain their suit. According to defendants, plaintiffs, as private citizens, lacked standing to bring a challenge under the CIOGS Ordinance because plaintiffs' interest in the suit was no different than the citizenry at large.

Michigan's approach to standing has historically reflected a "limited, prudential doctrine." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010). In *Miller v Allstate Ins Co*, 481 Mich 601, 606-607; 751 NW2d 463 (2008) (quotation marks, citations, and brackets omitted), the Michigan Supreme Court set forth the following principles related to standing:

> Our constitution requires that a plaintiff possess standing before a court can exercise jurisdiction over that plaintiff's claim. This constitutional standing doctrine is longstanding and stems from the separation of powers in our constitution. Because the constitution limits the judiciary to the exercise of judicial power, the Legislature encroaches on the separation of powers when it attempts to grant standing to litigants who do not meet constitutional standing requirements.

> Although the Legislature cannot expand beyond constitutional limits the class of persons who possess standing, the Legislature may permissibly limit the class of persons who may challenge a statutory violation. That is, a party that has constitutional standing may be precluded from enforcing a statutory provision, if the Legislature so provides. This doctrine has been referred to as a requirement that a party possess statutory standing. Statutory standing simply entails statutory interpretation: the question it asks is whether the Legislature has accorded this injured plaintiff the right to sue the defendant to redress his injury.

"The purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Lansing Sch Ed Ass'n*, 487 Mich at 355 (quotation marks and citation omitted). "[T]he standing inquiry focuses on whether a litigant is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable." *Id*. (quotation marks and citation omitted). Our Supreme Court has explained:

> [A] litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*Id*. at 372.]

As the majority notes, plaintiffs do not have a cause of action at law, and therefore must show that they have "a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large," or that "the statutory scheme implies that the Legislature intended to confer standing" to plaintiffs. *Id*.

-2-

Standing requires that plaintiffs have more than just a "personal stake" in the outcome of the litigation. *MOSES, Inc v SEMCOG*, 270 Mich App 401, 414; 716 NW2d 278 (2006). "Traditionally, a private citizen has no standing to vindicate a public wrong or enforce a public right where he is not hurt in any manner differently than the citizenry at large." *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629, 634; 537 NW2d 436 (1995) (quotation marks and citation omitted). See also *Duncan v Michigan*, 300 Mich App 176, 192; 832 NW2d 761 (2013) ("A litigant may have [prudential standing] if the litigant has a special injury or right . . . .") (quotation marks and citation omitted).

The majority concedes that plaintiffs' mere residence in the city is insufficient to establish standing, however, it focuses on the nature of the "surveillance technology itself" to conclude that plaintiffs are distinct from the general citizenry. The majority stresses that the technology is an inherently invasive method of government surveillance that subjects certain areas and individuals to constant surveillance. The CIOGS Ordinance defines "surveillance" as "the surreptitious or non-surreptitious monitoring, observing, watching, listening, capturing, tracking, or recording of a person's or group of persons' movements, characteristics, traits, communications, gestures, associations, or activities." Detroit Ordinances, § 17-5-451. It also defines "surveillance technology" to include "[g]unshot detection and location hardware and services." Detroit Ordinances, § 17-5-451(1)(g). While true that the technology constitutes surveillance as defined by the CIOGS Ordinance, I am unconvinced that the nature of the technology gives rise to the broad privacy concerns that the majority invokes in its analysis. The ShotSpotter technology uses sensors to detect the sound of firearm discharge and then relays the location of possible gunfire to the police. Though the ShotSpotter technology is "surveillance technology" by name, by its nature, it is no different than an individual overhearing the sound of a gunshot and making a call to the police, or a device that registers and records the speed that a car is traveling on the road. The technology is a data-collection tool to enhance public safety, and its limited method of recording sounds that could otherwise be observed by the public does not confer standing upon plaintiffs.

The majority also concludes that plaintiffs are distinct from the general citizenry because they reside in the limited areas where ShotSpotter technology has been implemented. In my view, plaintiffs' residence in areas subject to ShotSpotter technology is more appropriately construed as merely a "personal stake" in the *litigation*, *MOSES*, 270 Mich App at 414, rather than a "special injury" or "substantial interest" that amounts to standing, *Lansing Sch Ed Ass'n*, 487 Mich at 372. Because the technology affects residents of other precincts who may travel to neighborhoods where the technology is in use and is capable of being expanded throughout the city, plaintiffs' interest in the proceedings is no different from the citizenry at large. See, e.g., *Detroit Fire Fighters Ass'n*, 449 Mich at 634 ("[P]laintiffs' status as city employees or Detroit residents provides them with no greater interest in these proceedings than the thousands of other city employees or millions of city residents."). Plaintiffs also fail to show that defendants' alleged noncompliance with the CIOGS Ordinance caused them any special harm. Plaintiffs' injury—suffered by not being properly informed of the procurement of the ShotSpotter technology—was no different from any injury suffered by the citizenry at large.

This conclusion is bolstered by the text of the CIOGS Ordinance, which does not suggest that plaintiffs have a substantial and distinct interest in its enforcement. See *Mich Republican Party v Donahue*, 22 NW3d 564, 566 (2025) (interpreting the statutory provisions at issue to evaluate whether the plaintiff had a substantial and distinct interest); *Lansing Sch Ed Ass'n*, 487

Mich at 374 (same). While the CIOGS Ordinance makes general reference to the public and requires that "[t]he City department has publicly released the related Surveillance Technology Specification Report . . . and City Council has allowed an opportunity for public comment at all of the following properly-noticed hearings or meetings," Detroit Ordinances, § 17-5-452(a)(2), there is nothing in this language to imply that plaintiffs have a substantial interest that is "distinct from the general public," *Mich Republican Party*, 222 NW3d at 566.

Relatedly, plaintiffs argued in the trial court that, despite not having a direct cause of action under the CIOGS Ordinance, the structure of the Ordinance itself confers standing on them to bring their claims. Specifically, plaintiffs pointed to the reference to "Community Input" in the title of the CIOGS Ordinance. Under plaintiffs' reasoning, because the statute calls for community input, they have standing to assert their right to provide that input when properly noticed. This argument ignores the fact that "[a] statutory title is not considered part of the law itself, having no inherent legal effect beyond that of summarizing the law." *People v Clabin*, 411 Mich 472, 475; 307 NW2d 682 (1981) (quotation marks and citation omitted). Therefore, plaintiffs cannot rely on the title of the CIOGS Ordinance itself to establish standing to sue.

For the foregoing reasons, while I disagree with the trial court's and the majority's conclusions that plaintiffs have standing, I would nonetheless affirm the trial court's grant of summary disposition to defendants. See *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v City of Pontiac No. 2*, 309 Mich App 611, 626; 873 NW2d 783 (2015) (noting that this Court may affirm a trial court's ruling if it reaches the correct result).

/s/ Kirsten Frank Kelly