*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF MILDRED LYLE, by CHERI LYLE
HUDNUT, Personal Representative,

       Plaintiff-Appellant,

and

MICHIGAN HEAD & SPINE INSTITUTE, PC,
and VHS OF MICHIGAN, INC.,

       Intervening Plaintiffs-Appellees,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN, PROGRESSIVE
MICHIGAN INSURANCE COMPANY, WILLIE
FRANK WILLIAMS, and MOTOR CITY
TOWING SERVICE, INC.,

       Defendants-Appellees.

UNPUBLISHED
September 19, 2019

No. 343358
Wayne Circuit Court
LC No. 17-017579-NI

Before: SHAPIRO, P.J., and GLEICHER and SWARTZLE, JJ.

PER CURIAM.

A tow truck struck Mildred Lyle as she attempted to walk across a Detroit intersection. Lyle suffered devastating injuries and died eight months after the accident. Her personal representative, plaintiff Cheri Lyle Hudnut, brings this lawsuit. The complaint combines a tort action against defendant Willie Frank Williams, the truck's driver, and defendant Motor City Towing Service, the truck's owner, with a claim for personal injury protection (PIP) benefits. Hudnut asserts that either of two insurance companies (defendants Progressive Michigan Insurance Company or Farm Bureau General Insurance Company of Michigan) are responsible for payment of Lyle's first-party no-fault benefits.

Michigan Head and Spine Institute, P.C., and VHS of Michigan, Inc., filed a joint motion to intervene in the suit, alleging that they are owed more than $450,000 for medical services provided to Lyle. Plaintiff contended that the medical providers lack "standing" to sue independently under the no-fault act and therefore have no ability to intervene in a no-fault case. The trial court permitted intervention. We granted plaintiff leave to appeal, and now affirm.

## I. FACTS AND PROCEEDINGS

Before her death, Lyle made a claim for first-party no-fault benefits through the Michigan Assigned Claims Plan (MACP). The MACP allocated liability to Farm Bureau. The medical providers filed an action against the MACP in the Oakland Circuit Court. That case was in its infancy when the Supreme Court decided *Covenant Med Ctr Inc v State Farm Mut Auto Ins, Co*, 500 Mich 191; 895 NW2d 490 (2017). As discussed in greater detail below, *Covenant* holds that the no-fault act, MCL 500.3101 *et seq*., does not afford healthcare providers a statutory cause of action against no-fault insurers. *Id.* at 217 After *Covenant* was released, the parties stipulated to a dismissal of the Oakland County case without prejudice.

Lyle died in August 2017, and Hudnut initiated a probate proceeding in the Wayne Circuit Court. Because Lyle had not executed an assignment of her right to benefits in favor of her healthcare providers before her death, the providers filed an "emergency petition for assignment of the estate's right to collect no-fault benefits" in the probate action. The probate court denied the petition. Meanwhile, defendant Progressive, which insured Williams and Motor City Towing, filed a declaratory suit seeking a judgment that it was not obligated to pay no-fault benefits arising from the accident.

Lyle's estate commenced this action in December 2017. Her complaint seeks payment of first-party no-fault benefits for "reasonable and necessary expenses" related to Lyle's care, recovery and rehabilitation, and any other personal protection benefits that may be owed. The complaint also states a negligence claim for wrongful death against Williams and Motor City Towing. One week after this case was filed, the medical providers moved to intervene, invoking MCR 2.209(A) (intervention as of right) and MCR 2.209(B) (permissive intervention). The providers also filed a proof of claim in the probate case.

The medical providers' intervention complaint asserts that their charges for Lyle's care were reasonable and necessary, and that whichever insurance company was responsible for defendants' coverage was obligated to pay them. The providers' complaint requested the following relevant relief:

a. That this Court adjudicate Defendants' liability for services MHSI and DMC provided LYLE;

b. That this Court grant judgment against Defendants in an amount equal to the charge for services, together with costs, interest, and attorney's fees;

c. That, in accordance with MCR 2.605, this Court determine the total amount of liability due and payable to MHSI and DMC by Defendants[.]

Hudnut argued in the trial court that because the medical providers lack "standing" to sue under *Covenant*, they are precluded from intervening in this case. And if allowed to intervene, Hudnut asserted, the providers would bypass any order of priority established in the probate court. The providers acknowledged that they could not pursue a direct action against the insurers but insisted that they qualified for intervention under both MCR 2.209(A) and (B). Hudnut responded that allowing intervention would circumvent *Covenant* entirely, opening a backdoor for otherwise forbidden claims. The court granted the motion for intervention without identifying the applicable subsection of MCR 2.209. We granted plaintiffs' application for leave to appeal this decision. *Estate of Mildred Lyle v Farm Bureau Gen Ins Co*, unpublished order of the Court of Appeals, entered September 20, 2018 (Docket No. 343358).

II. *COVENANT*

Because *Covenant* is at the center of the parties' dispute, we begin with that case. *Covenant*, 500 Mich at 200, overturned "decades of Court of Appeals caselaw concluding that a healthcare provider may assert a direct cause of action against a no-fault insurer to recover no-fault benefits." In none of the Court of Appeals' opinions had the judges engaged in an analysis of whether a *statutory* cause of action existed. *Id*. at 202-203. Guided by the text, the Supreme Court determined that "the no-fault act does not, in any provision, explicitly confer on healthcare providers a direct cause of action against insurers." *Id*. at 204-205. Although the act provides that an insurer is liable to pay "certain listed costs" including medical expenses, the provisions setting forth this responsibility "do nothing more than define the scope and nature of the requisite coverage. They do not identify to whom the insurer is liable or who has the right to assert a claim for benefits." *Id*. at 206-207.

In reaching this conclusion, the Supreme Court considered various individual sections of the act and determined that none of them specifically authorized healthcare providers to sue insurers for reimbursement. *Id*. at 207. The Court paid particular attention to the text of MCL 500.3107(1)(a), which "provides that benefits are 'payable' for '[a]llowable expenses consisting of all reasonable charges *incurred* . . . .' " *Covenant*, 500 Mich at 207. "Incur" means "to become liable or subject to, especially because of one's own actions.' " *Id*. (cleaned up).[1] A healthcare provider does not "incur" charges for its services, the Court reasoned, and is similarly not "liable" for allowable expenses. "Rather, charges for healthcare are incurred by others, most commonly patients, and those patients are the ones who become liable for payment of those charges." *Id*. Nor did the text of MCL 500.3112 support a direct cause of action, the Supreme Court held. "Although this provision allows insurers to pay a provider of no-fault services directly 'for the benefit of' the insured, it does not establish a concomitant claim enforceable by an insured's benefactors." *Covenant*, 500 Mich at 213-214. The Court summarized:

---

[1] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, Cleaning Up Quotations, 18 J App Pract & Process 143 (2017).

[A] review of the plain language of the no-fault act reveals no support for plaintiff's argument that a healthcare provider possesses a statutory cause of action against a no-fault insurer. *This conclusion does not mean that a healthcare provider is without recourse; a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges.* However, a provider simply has no statutory cause of action of its own to directly sue a no-fault insurer. [*Id*. at 217-218 (emphasis added).]

The italicized text reinforces that although healthcare providers may not sue no-fault insurers directly, the act permits them to sue patients covered by no-fault policies. In addition to this legal avenue for payment, MCL 500.3112 "undoubtedly allows for the common practice of no-fault insurers directly paying healthcare providers," despite that the statutory text does not require this procedure. *Covenant*, 500 Mich at 208-209. Thus, when it comes to the payment of medical expenses, no-fault insurers may satisfy their obligations to insureds "by paying the injured person directly or by paying a party providing PIP services on the injured person's behalf." *Id*. at 209-210. The Supreme Court cautioned, however, that while "a third party may *receive* payment directly from an insurer for PIP benefits," no statutory "*entitlement*" exists. *Id*. at 210 (emphasis in original).

*Covenant* extinguished a health care provider's right to sue an insurer directly.[2] But it also highlighted that a provider has a legally legitimate interest in being paid for the medical services it provides to an injured person.

## III. INTERVENTION AND STANDING

MCR 2.209 provides interested parties two avenues for intervening in an ongoing action. Potential intervenors may establish a right to intervene under MCR 2.209(A), or demonstrate circumstances supporting a need to intervene under MCR 2.209(B). The court rule provides, in relevant part:

(A) Intervention of Right. On timely application a person has a right to intervene in an action:

(1) when a Michigan statute or court rule confers an unconditional right to intervene;

(2) by stipulation of all the parties; or

---

[2] The Legislature "overruled" *Covenant* by enacting 2019 PA 21, which the Governor signed on May 30, 2019. Section 3112 now provides that "A health care provider . . . may make a claim, and assert a direct cause of action against an insurer, or under the assigned claims plan . . . to recover overdue benefits payable for charges for products, services, or accommodations provided to an injured person."

(3) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(B) Permissive Intervention. On timely application a person may intervene in an action

(1) when a Michigan statute or court rule confers a conditional right to intervene; or

(2) when an applicant's claim or defense and the main action have a question of law or fact in common.

In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

We review a trial court's decision to grant a motion to intervene for an abuse of discretion, and consider de novo a trial court's interpretation of a court rule. *Hill v LF Transp, Inc*, 277 Mich App 500, 507; 746 NW2d 118 (2008). Statutory construction principles guide our interpretation of court rules; we apply the rule's plain and unambiguous language as written. *Spine Specialists of Mich, PC v State Farm Mut Auto Ins Co*, 317 Mich App 497, 501; 894 NW2d 749 (2016). The court rule permitting intervention should be construed liberally "to allow intervention where the applicant's interests may be inadequately represented." *Neal v Neal*, 219 Mich App 490, 492; 557 NW2d 133 (1996).

The medical providers established both a right to intervene under MCR 2.209(A) and grounds for permissive intervention under MCR 2.209(B). Before examining the language of the court rule in greater detail, we consider Hudnut's arguments that intervention is prohibited because the medical providers lack "standing" and that their involvement would be "redundant," as plaintiff already shares the same recovery goals.

A. The Providers Have Standing

"The purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (cleaned up). The medical providers have such an interest in this case. What the providers lack is a direct, statutory cause of action against an insurer under the no-fault act. Despite that the medical providers have no statutory cause of action against defendant insurance companies, they do have standing to seek a declaratory judgment under MCR 2.605. And more importantly, the plain language of MCR 2.209 does not support that the intervenors must possess a direct cause of action against the insurers to intervene in this case.

When the Legislature expressly provides a cause of action, it confers standing to sue. But even when no explicit statutory cause of action exists, our Supreme Court has recognized that a litigant may have standing to litigate a claim. In *Lansing Schools*, 487 Mich at 359, the Supreme

Court recounted that before Michigan's time-honored approach to standing was altered by *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726; 629 NW2d 900 (2001), and *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608; 684 NW2d 800 (2004),

> where a cause of action was not provided at law, the Court, in its discretion, would consider whether a litigant had standing based on a special injury or right or substantial interest that would be detrimentally affected in a manner different from the citizenry at large, or because, in the context of a statutory scheme, the Legislature had intended to confer standing on the litigant.

For example, standing could be "*implied* by the duties and obligations . . . expressly stated" in an enactment. *Romulus City Treasurer v Wayne Co Drain Comm'r*, 413 Mich 728, 741; 322 NW2d 152 (1982) (emphasis added).

*Lee* and *Cleveland Cliffs* erroneously "constitutionalized" standing, the Supreme Court held, as unlike the federal Constitution, Michigan's Constitution has no "case or controversy" requirement. *Lansing Schools*, 487 Mich at 366. In overruling those cases, the Supreme Court reinvigorated the standing doctrine in existence before they were decided, reciting the principles guiding standing as follows:

> Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*Id.* at 372.]

The Supreme Court determined that the plaintiffs in *Lansing Schools* had standing despite that the relevant statute did not grant them an independent right of action: "We hold that, in this case, plaintiffs have standing because they have a substantial interest in the enforcement of MCL 380.1311a(1) that will be detrimentally affected in a manner different from the citizenry at large if the statute is not enforced." *Lansing Schools*, 487 Mich at 373. The Supreme Court forcefully rebuffed the notion that a statutory cause of action (or *any* formal cause of action) is required to establish a justiciable claim. We repeat the Supreme Court's words: "Where a cause of action is *not* provided at law," a litigant may nonetheless have standing "based on a special injury or right or substantial interest that would be detrimentally affected in a manner different from the citizenry at large[.]" *Id*. at 372 (emphasis added).

Here, the medical providers have standing because they possess a substantial interest in the application of MCL 500.3107(1)(a) and MCL 500.3112 that would be "detrimentally affected in a manner different from the citizenry at large" if those statutes are not enforced. Fundamentally, standing to sue under Michigan law is a "prudential" doctrine, and not a bright-line test. In other words, despite that a party may not have a direct, statutory cause of action, the party may nonetheless have standing. To reinforce this point, we borrow from the reasoning of the United States Supreme Court.

In *Lexmark Int'l, Inc v Static Control Components, Inc*, 572 US 118, 128; 134 S Ct 1377; 188 L Ed 2d 392 (2014), the Supreme Court considered whether Static Control Components could sue Lexmark International, Inc., for false advertising under the Lanham Act, 15 USC 1125(a): "[T]he question this case presents is whether Static Control falls within the class of plaintiffs whom Congress has authorized to sue under § 1125(a). In other words, we ask whether Static Control has a cause of action under the statute." In a footnote, the Supreme Court explained that "[w]e have on occasion referred to this inquiry as 'statutory standing' and treated it as effectively jurisdictional." *Id*. at 128 n 4. This nomenclature is "misleading," the Court stressed, as "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." *Id*. (cleaned up, emphasis in original). See also *American Psychiatric Ass'n v Anthem Health Plans, Inc*, 821 F3d 352, 359 (CA 2, 2016) (cleaned up) ("Finally, a plaintiff must have a cause of action under the applicable statute. This was formerly called 'statutory standing.' In the past, we suggested that this was either a separate aspect of standing or a part of the prudential aspect of standing. The Supreme Court has recently clarified, however, that what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff has a cause of action under the statute.").

In other words, the absence of a statutory cause of action relates to the *merits* of a plaintiff's claim rather than the jurisdiction of the court entertaining it. And this Court has recognized that "[s]tanding in no way depends on the merits of the case." *Rogan v Morton*, 167 Mich App 483, 486; 423 NW2d 237 (1988). The Supreme Court's opinion in *Lash v Traverse City*, 479 Mich 180; 735 NW2d 628 (2007), also illustrates this distinction. The plaintiff in *Lash* sought employment with the Traverse City Police Department. *Id*. at 183-184. The department required police officers to reside inside the city or within a certain distance from the city limits. *Id*. at 184. Plaintiff resided slightly beyond the required limit but was otherwise qualified for employment. *Id*. He refused to move, the police department rescinded its offer of employment, and the plaintiff sued the city for damages, invoking MCL 15.602. *Lash*, 479 Mich at 184-185.

The Supreme Court held that the residency requirement violated MCL 15.602(2), but also determined that the statute did not afford the plaintiff a private cause of action for damages. *Lash*, 479 Mich at 183. Nevertheless, the Court explained, the plaintiff could have sued for injunctive or declaratory relief. *Id*. at 196. Thus, despite that the plaintiff lacked statutory "standing" to sue for damages, the Supreme Court construed the statute to permit a cause of action if there were otherwise an actual controversy or particularized showing of harm. Had the Court been divested of jurisdiction due to the plaintiff's inability to bring a damages claim, the Supreme Court would have refrained from issuing an otherwise advisory opinion addressing the statute's reach. And more recently, the Supreme Court observed, "Even though a statutory private cause of action for monetary damages does not exist, a plaintiff may nonetheless maintain a cause of action for declaratory and equitable relief." *Mich Ass'n of Home Builders v City of Troy*, __ Mich __; __ NW2d __ (Docket No. 156737, July 11, 2019), slip op at 19.

Hudnut's argument that the medical providers lack "standing" to intervene in this case is without merit. A trial court has jurisdiction to determine whether a potential intervenor may join an action even though the intervenor lacks a direct cause of action for damages. If a proposed intervenor has some stake in the outcome of an action, it is entitled to press its case for

intervention. The language of the court rule additionally confirms that a statutory cause of action is not a prerequisite for intervention.

## B. Intervention is Justified Under MCR 2.209

While "standing" requires a substantial interest in an issue, intervention requires less. Intervention is a pragmatic procedural device designed to permit those with some interest in the litigation to participate in its outcome under certain circumstances. A party may intervene in an action as of right if "a Michigan statute or court rule confers an unconditional right to intervene," all parties to the case stipulate to intervention, or "when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." MCR 2.209(A).[3] Here, the medical providers assert an interest in the proceeds of plaintiff's tort and first-party claims, and contend that these actions involve damages that include Lyle's medical bills. The providers point out that they unsuccessfully sought an assignment from Lyle's personal representative, which would have signaled plaintiff's willingness to voluntarily reimburse the providers for Lyle's medical expenses. They contend that the personal representative's refusal to assign Lyle's rights supports that the provider's ability to protect their interest in any damages awarded to Lyle's estate could be impaired if Hudnut's counsel settled for a small amount, dismissed the first-party claim with prejudice, or failed to present the medical expense claim to the jury in its entirety.

We agree that the providers have established an interest in the disposition of the action that may not be adequately represented by the existing parties. "[T]he concern of inadequate representation of interests need only exist; inadequacy of representation need not be definitely established. Where this concern exists, the rules of intervention should be construed liberally in favor of intervention." *Vestevich v West Bloomfield Twp*, 245 Mich App 759, 762; 630 NW2d 646 (2001). We highlight that under *Covenant*, the providers are not empowered to pursue a direct claim against defendants for damages. Intervention is not an invitation for an end-run around *Covenant*; intervention is not a license to seek a judgment against the insurance companies. The providers are, however, free to seek a declaratory judgment regarding their right to payment, and to otherwise participate in the proceedings. Alternatively, the providers may seek to amend their complaint for intervention to lodge a cross-complaint against Hudnut.

The medical providers also satisfy the grounds for permissive intervention under MCR 2.209(B)(2), as their claim and that of plaintiff share common questions of fact and law. Those questions include whether the proposed intervenors' charges were reasonable and the services necessary, and the amount of money potentially owed by Lyle's estate to pay the providers for the services they rendered. These commonalities suffice to establish permissive intervention

---

[3] This rule supplies two grounds for intervention in addition to the existence of "a Michigan statute or court rule" conferring "an unconditional right to intervene." The existence of these additional pathways signals that an intervenor need not possess "statutory standing" to enter an on-going lawsuit.

-8-

under MCR 2.209(B). We reiterate that the medical providers' intervention does not entitle them to pursue a direct claim for damages against defendants. But at the least, they may seek a declaration clarifying their right to payment in a specific amount. Accordingly, the trial court did not abuse its discretion in granting the medical providers' motion for intervention.

We affirm.


/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher