*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TIFFANY SHANTEL ROBINSON,

Plaintiff-Appellee,

v

JANET ELAINE SZCZOTKA, and THE ASU
GROUP-ASU RISK MANAGEMENT,

Defendants,

and

SUBURBAN MOBILITY AUTHORITY FOR
REGIONAL TRANSPORTATION, also known as
SMART.

Defendant-Appellant.

UNPUBLISHED
November 25, 2025
2:52 PM

No. 359646
Wayne Circuit Court
LC No. 20-012733-NI

ON REMAND

Before: K. F. KELLY, P.J., and MURRAY and SWARTZLE, JJ.

PER CURIAM.

This action for personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, is before the Court on remand from the Supreme Court. *Robinson v Szczotka*, ___ Mich ___; 25 NW3d 335 (2025). Specifically, in lieu of granting leave to appeal, the Court vacated this Court's opinion in *Robinson v Szczotka,* unpublished per curiam opinion of the Court of Appeals, issued April 6, 2023 (Docket No. 359646), and remanded to this Court for reconsideration in light of *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 165537, 165538, and 165964). On remand, this Court is asked to reconsider whether a patient who has assigned her claim for PIP benefits to a third party may still file a lawsuit to recover those benefits. We vacate the trial court order and remand for further proceedings.

I. BACKGROUND

The facts and prior proceedings are recounted in our prior opinion. In that prior opinion we held that the trial court erred when it denied defendant SMART's motion for summary disposition, because at the time plaintiff commenced this action she was not the real party in interest because she assigned the right to bring a claim for unpaid PIP benefits to her medical providers. *Robinson*, unpub op at 5. We explained "[t]hat being the case, the medical providers as assignees held the right to seek to recover the unpaid medical bills, and plaintiff no longer had a cause of action to pursue, having transferred it away." *Id*. at 6. Further, we noted that, except for one, the medical providers had not exercised their rights under the assignments by bringing suit within a year of providing the services and, as a consequence, their rights were statutorily barred. *Id.*

We also held that agreements signed during the trial court proceedings between plaintiff and her medical providers purporting to revoke the original assignments "nunc pro tunc," did not have the intended effect. *Robinson*, unpub op at 6. Recognizing that "one must be the real party in interest at the time the lawsuit is filed, and a retroactive, or *nunc pro tunc*, revocation may not be used to correct a factual problem that existed when the lawsuit was filed," *id*. at 7, we reasoned:

> While plaintiff and her medical providers were at liberty to mutually decide to revoke the assignments, the revocations were effective as of the date that the revocations were executed and could not essentially eliminate the fact that the assignments had occurred prior to plaintiff filing suit. And, the medical providers had no timely claims to return to plaintiff as of the date of the revocations because the revocations occurred more than a year after services were rendered. Thus, the mutual revocations did not assign any timely claims to plaintiff. [*Id*.]

We rejected plaintiff's position "that [the] mutual revocation of an agreement returns the parties to the status quo as it existed prior to the assignment," noting that "[w]hile this may be true in some cases, the same cannot be said when the revocation occurs after the time for performance matures or the rights of the parties become fixed." *Id*. As a result, the trial court erred in denying SMART's motion for summary disposition. *Id*. at 8.

As noted, plaintiff sought leave to appeal, which the Supreme Court held in abeyance pending its decisions in *C-Spine Orthopedics, PLLC v Progressive Michigan Ins Co* (Docket Nos. 165537-8) (*C-Spine*) and *Wallace v Suburban Mobility Auth for Regional Transp* (Docket No. 165964) (*Wallace*). *Robinson v Szczotka*, 997 NW2d 41 (Mich, 2023).

II. ANALYSIS

The issue remanded to us—whether plaintiff, a patient who assigned her claims for PIP benefits to her medical providers, may still file a claim to recover those benefits—was fully explored in C-*Spine Orthopedics*. In that opinion, the Court considered two cases that presented similar issues under the no-fault act. In *C-Spine*, the plaintiff, a medical provider, assigned its claim to certain PIP benefits to several medical factoring companies. In *Wallace*, the plaintiff, a patient, assigned some of her claims for PIP benefits to her medical providers. In both cases, after the plaintiffs commenced litigation, the defendant insurers argued that the plaintiffs could not bring

suit because, having assigned away their claims, they were no longer the real parties in interests. *C-Spine Orthopedics*, ___ Mich at ___; slip op at 2. In response, both plaintiffs argued that they restored their rights to pursue benefits because they rescinded or revoked the assignments.

Before it considered the merits of the parties' positions, the *C-Spine Orthopedics* Court engaged in a thorough review of the law related to assignments, standing, the real party in interest rule, amending pleadings, and the relation-back doctrine. Turning first to assignments, the Court explained that "[a]n assignment of rights occurs when the assignor transfers his or her rights or interest to the assignee." *C-Spine Orthopedics*, ___ Mich at ___; slip op at 15, quoting *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 284; 983 NW2d 401 (2022). The Court elaborated that "where an assignment is such that satisfaction of the judgment obtained by the assignee will discharge the defendant from his obligation to the assignor, for the purpose of the suit the assignee is the real party in interest and may maintain an action in his own name." *C-Spine Orthopedics*, ___ Mich at ___; slip op at 16 (quotation marks and citation omitted). Particularly relevant to this case, the Court explained that "Michigan courts have long recognized that a plaintiff who assigns a claim cannot then bring suit to collect on that claim as that plaintiff is no longer the real party in interest." *Id*. at ___; slip op at 15.

Next, the Court addressed the relationship between the standing doctrine and the real party in interest rule. *Id.*; slip op at 17. The Court quickly noted that referring to the real party in interest rule as a standing doctrine was "imprecise," explaining that while the two doctrines function similarly, they are derived from different sources and serve different purposes. *Id*. Standing generally refers to the right of a plaintiff initially to invoke the power of a trial court to adjudicate a claim. *Id*. Quoting from *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010), the Court explained that "[a] litigant may have standing . . . if the litigant has a special injury or a right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant." *C-Spine Orthopedics*, ___ Mich at ___; slip op at 18. By contrast, the Court noted that the real party in interest rule is derived from statutes and court rules, *id*, recognizing that both MCL 600.2041, a portion of the Revised Judicature Act,[1] and MCR 2.201(B)(1), require that, excluding some enumerated exceptions, an action must be prosecuted in the name of the real party in interest. *Id*. at ___; slip op at 17. Quoting from *Kearns v Mich Iron & Coke Co*, 340 Mich 577, 581; 66 NW2d 230 (1954), the Court explained that the real party in interest rule was adopted "to protect defendant from being repeatedly harassed by a multiplicity of suits for the same cause of action . . . ." *C-Spine Orthopedics*, ___ Mich at ___; slip op at 20.

Particularly relevant to this case, the Court addressed the consequences if a case is not filed by the real party in interest. Reiterating that the real party in interest status is initially assessed at the time the complaint is filed, *C-Spine Orthopedics*, ___ Mich at ___; slip op at 21, it acknowledged that failure to bring suit in the name of the real party in interest is a ground for dismissal. *Id*. at ___; slip op at 22. However, the Court clearly held that "it does not follow—as defendants suggest—that a suit originally filed in the name of someone other than the real party in interest must *necessarily* be dismissed." *Id*. Instead, "[i]t is possible, in some circumstance for a

---

[1] MCL 600.101 *et seq*.

plaintiff to cure this defect." *Id*. But the plaintiff must take the "proper steps" to do so. *Id*. at ___; slip op at 23. In this regard, the Court held that "[a] plaintiff may not fix real part in interest defects by unilateral actions taken outside of court . . . ." *Id*. Instead, a plaintiff "must take some action in the litigation that would allow the court to assess the effect of the change in parties." *Id*. Although acknowledging that the list was not exhaustive, the Court suggested that a plaintiff could file an amended complaint joining or substituting the proper plaintiff; the real party in interest could intervene; or a plaintiff could amend the complaint reflecting that they had become the real party in interest through an assignment. *Id*. As the Court explained, any of these actions would permit the trial court "to consider whether the correction of the real party in interest defect may relate back to when the original complaint was filed, or whether the suit will be barred by the running of the statute of limitations or the one-year-back rule—as well as any other obstacles that might arise." *Id*. at ___; slip op at 23-24.

Regarding whether the corrective action would give rise to any obstacles, the *C-Spine Orthopedics* Court discussed the ability to amend pleadings, the relation-back doctrine, and the interplay between the two. The Court noted that leave to amend under MCR 2.118 may be denied because of "(1) 'undue delay,' (2) 'bad faith or dilatory motive on the part of the movant,' (3) 'repeated failure to cure deficiencies by amendments previously allowed,' (4) 'undue prejudice to the opposing party by virtue of allowance of the amendment,' and (5) 'futility'." *C-Spine Orthopedics*, ___ Mich at ___; slip op at 24. The Court then considered MCR 2.118(D), which addresses the relation back of amendments:

> An amendment that adds a claim or a defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading.

Accordingly, under MCR 2.118(D), an amendment that "introduces new facts, a new theory, or even a different cause of action will still relate back, so long as it springs from the same transactional setting as that pleaded originally." *C-Spine Orthopedics*, ___ Mich at ___; slip op at 25 (quotation marks and citation omitted). However, there are some limitations; the relation back doctrine does not apply to the addition of new parties. *Id*.

After surveying these legal principles, the Court applied these principles to the two cases before it. Because the facts and proceedings in this case are nearly identical to the circumstances in *Wallace*, our focus is on the Court's resolution of that case. Indeed, both our plaintiff and Wallace were injured while passengers on a SMART bus hit by Janet Elaine Szczotka's vehicle. *C-Spine Orthopedics*, ___ Mich at ___; slip op at 10. Wallace received treatment for her injuries from several medical providers and, in each instance, she executed assignments transferring her right to collect PIP benefits to the providers. *Id*. After executing these assignments, Wallace filed suit against SMART seeking payment of PIP benefits for the treatment she received. *Id*. at ___; slip op at 11.

Similar to the instant case, SMART moved for summary disposition arguing that Wallace did not have a legal right to collect benefits because she had assigned that right to her medical providers. *Id*. at ___; slip op at 12. The trial court in *Wallace* deferred ruling on the summary disposition motion to allow Wallace to revoke the assignments. *Id*. Wallace then obtained "mutual

-4-

recessions" from all of her providers. *Id*. Thereafter, the trial court denied SMART's motion for summary disposition. *Id*. On interlocutory appeal, this Court reversed. *Wallace v Suburban Mobility Auth for Regional Transp*, 347 Mich App 380, 383; 15 NW3d 306 (2023), aff'd in part, vacated in part, and rev'd in part, *C-Spine Orthopedics*, ___ Mich ___. The Court held that upon execution of Wallace's assignments, the medical providers became the real parties in interest to the claim for PIP benefits and only the providers could bring the action to recover benefits. *Wallace*, 347 Mich App at 389. This Court also rejected Wallace's attempts to save her suit by relying on the "revocations" of her assignments, holding that by the time the rescission agreements were created, the providers no longer had valid claims for benefit by operation of the one-year back rule. *Wallace*, 347 Mich App at 390-391.

The Supreme Court held that while Wallace had standing to file a lawsuit, she lost her real party in interest status when she assigned her claims for PIP benefits to her medical providers. *C-Spine Orthopedics*, ___ Mich at ___; slip op at 27. However, if Wallace could show that she cured her real party in interest defect, her lawsuit could survive. *Id*. at ___; slip op at 28. At the outset, the Court rejected Wallace's argument that because she and her medical providers mutually rescinded the assignments, this rendered them void *ab initio*, and retroactively made her the real party in interest at the time she filed her complaint. *Id*. at ___; slip op at 33. The Court reemphasized that "rescission of a contract subject to litigation does not function by automatic operation of law." *Id*. (citation and quotations marks omitted). "Rather, it is an equitable remedy that the trial court may grant, in its discretion, after balancing the equities." *Id*. Further, the Court held that "[t]hese equitable considerations apply to a court's decision to extend the effect of a recession on a third party." *Id*. at ___; slip op at 34. The Court went on to hold that "[w]hile courts may extend a mutual rescission to third parties as an equitable remedy, Wallace and her medical providers cannot unilaterally declare a 'rescission' and apply its effect retroactively to ongoing litigation with third parties." *Id*. at ___; slip op at 34-35. The Court held that even if Wallace and her providers' actions successfully resulted in a mutual rescission of the assignments, the rescission could not be given legal effect as to a third party absent a ruling from a court. *Id*. at ___; slip op at 35.

The Court stressed the critical importance of a finding that the assignments had been rescinded as opposed to revoked, as a rescission is not the same as a revocation, repudiation, or cancellation of a contract. *C-Spine Orthopedics*, ___ Mich at ___; slip op at 36. Indeed, "[i]f the court recognizes a rescission, an equitable remedy, it is as if the contract at issue never existed." *Id*. A finding that the assignment contracts never existed would be critical when assessing whether a plaintiff's claims were viable in light of the no-fault act's one-year-back rule. The Court explained:

> Here, a rescission would make things as if the first assignments from Wallace to her providers never existed. But because rescission is an equitable remedy, a court would have to balance the equities before granting that relief. The distinction between rescission and revocation matters here. The Court of Appeals, treating the agreements as revocations, recognized that they returned Wallace's rights to sue, but concluded that they did so too late. *Wallace*, 347 Mich App at 389-391. Had it recognized them as rescissions the result might have been different. [*C-Spine Orthopedics*, ___ Mich at ___; slip op at 36-37 (footnote omitted).]

Ultimately, the Court's resolution of Wallace's appeal turned on the fact that the trial court, because of its understanding of the legal issues before it, did not engage in a rescission analysis. Put another way, the trial court accepted Wallace's rescission, but never balanced the equities before doing so. Moreover, the Supreme Court concluded that because rescission is a remedy that lies in the sound discretion of the court, it was necessary for the trial court to consider this issue. *Id*. at ___; slip op at 37. Accordingly, the Supreme Court held:

> In *Wallace*, we agree with the Court of Appeals' holding that Wallace was not the real party in interest after she assigned away her claims. But we reverse the Court of Appeals' decision to the extent that it held that Wallace did not have standing and that she could not attempt to reobtain her status as a real party in interest after obtaining the mutual rescissions. Further, we vacate the Court of Appeals' holding that, if Wallace revoked her assignments, then her claims are barred by MCL 500.3145(2), and we remand to the trial court to balance the equities and determine whether equitable rescission is warranted under the facts of this case. [*C-Spine Orthopedics*, ___ Mich at ___; slip op at 38.]

*C-Spine Orthopedics*, particularly its resolution of the *Wallace* case, is directly on point and controlling. Just like in *Wallace*, plaintiff was injured in a motor vehicle accident on October 2, 2019, and after the accident assigned her rights to pursue PIP benefits to her medical providers. On September 28, 2020, less than a year after her accident, plaintiff filed a complaint to collect first-party no-fault PIP benefits. Then, on September 20, 2021, plaintiff and several of her medical providers entered into agreements whereby they agreed to revoke and rescind, "nunc pro tunc" the assignments. Similar to *Wallace*, SMART argued that plaintiff was not the real party in interest and had no standing to pursue her claims because she had already assigned her claims to her medical providers. The trial court denied the motion, in part, based on its finding that respondent and her medical providers had revoked the assignments and, as a consequence, plaintiff could pursue her claim for PIP benefits. As in *Wallace*, the trial court here accepted plaintiff's claim of rescission, but never balanced the equities.

Accordingly, the trial court's order denying SMART's motion for summary disposition is vacated, and the matter is remanded for the trial court to "balance the equities and determine whether equitable rescission is warranted under the facts of this case" and whether the real party in interest defect that existed at the filing of the complaint can be cured. *C-Spine Orthopedics*, ___ Mich at ___; slip op at 38-39. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray
/s/ Brock A. Swartzle

-6-